60 CCPA

### Application of Richard L. NELSON.

### Patent Appeal No. 8793.

United States Court of Customs and Patent Appeals.

Dec. 29, 1972.

Michael Dinnin, Jr., Detroit, Mich., attorney of record, for appellants; Neal A. Waldrop, Detroit, Mich., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals insofar as it affirmed the examiner's rejection of claim 7 of appellant's application serial No. 615,192, filed February 10, 1967, for "Method of Handling and Dispensing Small Articles." We affirm.

Appellant's method invention involves the color-coded dispensing of small flat packets, for example, hospital "diet kit" packets containing particular contents as typified by the following tabulated examples:

| Packet Color Code | Packet Contents | Diet Description |
|---|---|---|
| Green | Sugar, Salt, Pepper, Napkin | Regular |
| Blue | Two Sugars, Salt, Pepper, Napkin | Double Sugar |
| Yellow | Sugar Substitute, Salt, Pepper, Napkin | Sugar Free |
| Orange | Sugar Substitute, Salt Substitute, Pepper, Napkin | Low Sodium, Sugar Free |

The packets are dispensed from a plurality of side-by-side cartons, which are also color coded as to their contents as shown in Figs. 2 and 4 below.

FIG. 4

FIG. 2

[A6989]

The shipping carton is 10, containing individual packet containers 15, the packets being 20. All three are color-coded by matching spots 26. Shipping container 10 is opened at the bottom by turning down flap 23, as by removal of a tear strip along the top of flap 23, giving access to containers 15 at their open lower front portions, through which packets 20 can then be withdrawn. (This *structure* is patented to appellant, patent No. 3,306,437, issued February 28, 1967, now assigned to Diamond Crystal Salt Co., assignee of the present application.)

Claim 7, the sole subject of this appeal reads:

[a]     7.  The method of using a plurality of generally fully closable shipping cartons each having top and bottom flaps, and each having a plurality of inner cartons transportable within same, which inner cartons have dispensible items packed in containers therein, each said inner cartons comprising four elongated side panels and a generally closed bottom for supporting the dispensible item containers with one of said elongated side panels having, in the lower portion of same, crosswise thereof, and generally adjacent said closed bottom, a cut out portion forming a dispensing opening in said side panel, through which said container of dispensible items may be dispensed, and indicia in the form of readily visible color coded markings at least on said individual containers of the dispensible items, and on the outer face of said individual inner cartons generally proximate to said dispensing opening thereof, at least when said inner cartons are outside of said shipping cartons, to show at a glance the kind of packaged dispensible items pack-

ed in said inner cartons, and whether the proper packaged items have been packed therein,

said method comprising,

[b] facilitating the accurate handling and dispensing of said containers which are in the form of substantially flat packets, from a plurality of generally adjacent generally closed bottom inner cartons each holding a mulitplicity of said packets stacked therein, by the steps of:

(1) providing each said inner carton with a dispensing opening in a side thereof generally adjacent said closed bottom, said opening being of a dimension

approximately equal to that of said packets

and in a position to facilitate their removal therethrough generally one at time,

(2) applying one set of separate, and distinct color coded markings to each of said inner cartons,

(3) applying second set of separate, and distinct color coded markings to said packets before they are disposed within each carton such that markings on the packets are in correspondence with markings on a particular carton to hold said packets,

(4) placing said packets in said cartons, and

(5) dispensing said packets from said container cartons.

The appealed rejection is on the sole ground of obviousness under 35 U.S.C. § 103, two references being primarily relied on by the examiner:

| | | |
|---|---|---|
| O'Neil-Dunne (Canada) | 594,568 | March 15, 1960 |
| Harley (Great Britain) | 274,172 | July 1927 |

The board also referred to another reference of record:

| | | |
|---|---|---|
| Bramhill | 2,875,938 | March 3, 1959 |

While Bramhill was not relied on by the examiner in his Answer and while in using it the board said it was not making a new ground of rejection, appellant discusses this patent in his brief as part of the prior art and treats the rejection as based on all three reference patents.

O'Neil-Dunne (hereinafter O'Neil) discloses a combined package displaying and dispensing device for such items as cigarettes, gum, razor blades, candy, and the like in which the packages are supported in a stack and withdrawn from the bottom of the dispenser, the front of the dispenser being a double-walled transparent container in which a plurality of duplicate or dummy packages can be placed so as to show what is in the dispenser.

*Fig.2*

[A6990]

Fig. 2 shows the device used as a dispenser for cigarette packages A, removable one a a time (A') from the bottom

opening above shelf 5 in the direction of arrow 10. The front closure is shown at 2, separated from the dispenser, containing dummy packs A". Screws 14 on the closure drop into downwardly inclined slots 15 in the casing side walls 4. The entire unit is designed to be permanently supported on a wall or other vertical surface by screws or the like passing through the back.

Harley discloses a display package for "the leads of propeller pencils" which come in various colors. Fig. 2 is illustrative:

Fig. 2.

[A6991]

A flat box 1 has a hinged cover 2 with side walls 3. Box 1 is divided into sections by a number of inner frames 4, each frame containing several boxes of leads 5 of one color. The patent says:

> The inside and if required the outside of the lid 2 of the outer container or box 1 is marked opposite the end of each of the inner frames 4 with a colour or other quality appertaining to the leads within the packages in that frame or compartment, and the exterior of each of the inner packages is similarly marked or printed with particulars of its contents.

Fig. 1, not reproduced, shows the box closed with the words RED BLUE GREEN BLACK in panels along the front edge of cover 2 in similar fashion to the same designations shown along the back inside edge of the cover in Fig. 2.

Bramhill Fig. 5, reproduced below, shows a cigarette packaging and dispensing carton which has a tear strip

32, removal of which will open the carton at one end so that the cigarette packages can be dispensed from the bottom as shown in Fig. 1:

FIG.5

FIG.I

[A6992]

The rationale of the rejection appears in the following summary by the board:

O'Neil-Dunne shows a dispenser for cigarettes having the physical characteristics of the claimed single unit dispenser 15 of appellant. The O'Neil-Dunne patent depends on dummy packages and the common indicia on the dispensed package for identification purposes. To add color indicia as shown by the patent to Harley, and of such common practice that we may take judicial notice thereof, to the O'Neil-Dunne device would be obvious, as would the use of a plurality of such dispensers placed side by side to dispense various brands or types of articles, as suggested by Harley, and as is common in the art as is evidenced by the large variety of dispensing machines in common use.

Quite obviously, a plurality of devices such as shown by O'Neil-Dunne could be placed in the commonly used sealable shipping center [carton?] for shipment.

While we are not making a new rejection, it is noted that the Bramhill patent 2,875,938 of record shows a dispensing carton substantially identical to appellant's dispensing carton 15 except for an explicit statement of color identification.

By virtue of having written a very long and very detailed claim, appellant has been able to tabulate a very long list of differences between his invention and the prior art, allegedly eleven differences. He then correctly states the law, as laid down in Graham v. John Deere, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545

(1966), to be that we must determine the scope and content of the prior art, ascertain the differences between the prior art and the claim, resolve the level of ordinary skill in this art, and, against this background, determine the obviousness or unobviousness of the invention.[1]

Following the Graham v. John Deere formula, the content and scope of the prior art are simple and clear and set forth pictorially above. Before we can determine how the invention differs therefrom we have to determine what the invention is. This requires cutting through the verbiage of claim 7 in an effort to determine what method Nelson invented.

A method is a sequence of steps, in this case steps performed in the "handling and dispensing of small articles," according to the title of the application, or flat packets according to the claim. Of course, we must determine the invention from the claim and appellant has given us some help in analyzing it by tabulation and explanation. First, he divides claim 7 into two parts, (a) the part before the phrase "said method comprising" and (b) the part after. He says, "Part (a) represents Nelson '437 patent claim 10 with changes * * * and part (b) represents the steps of the method." Patent claim 10 is directed to a combination of physical elements and this part of the claim, therefore, is mere-

ly a recitation of the apparatus utilized in carrying out the method. The rest of the claim tells us what the method is. It has five steps, helpfully numbered, elaborately stated. Simplifying them by reference to the drawings reproduced above, without in any way changing their substance, we consider them to be as follows:

1. providing the openings 18 in inner cartons 15

2. marking cartons 15 with color indicia 26

3. marking packets 20 with corresponding color indicia 26

4. putting packets 20 in cartons 15, matching color codes

5. taking packets 20 out of cartons 15 through openings 18

While those are all of the enumerated steps of the method, we should assume, additionally, by reason of the preamble to part (b) of the claim, that there are several cartons 15 more or less adjacent to one another and, to be fair to appellant, that they and the packets they contain are of different types, differently color coded, so that the color coding helps the user of this invention to select and dispense the kind of packet—such as a hospital "diet kit"—that he wants.[2]

---

1. This we have to do in this case without consideration of any circumstances having a bearing on unobviousness such as commercial success, filling a long-felt need, failure of others, etc. The record contains no evidence of such facts. In the briefs here and in the Patent Office there are assertions of successful commercial use by the alleged assignee, Diamond Crystal Salt Company, some apparently commercial descriptive literature was annexed to the brief before the board, and at oral argument before us the court was deluged with Diamond Crystal Salt "diet kits" in inner cartons resembling cartons 15 packed in shipping cartons like carton 1 but lacking the bottom opening. All of this had a commercial look but none of it constitutes proof of anything. None of these articles was ever made an exhibit or otherwise put in evidence. No affidavits were filed. We cannot assume commercial success from mere assertions in briefs or from merchandise brought into court merely to augment argument, interesting though it may be and however much it may assist us in understanding the invention, which it surely has. Nor was there any proof of the level of ordinary skill in the art other than what we can glean for ourselves from three patents, the application, and matters of which we can take judicial notice.

2. It will be noted that the claimed method does not involve the bottom opening 23 in shipping carton 10.

We can discern no reversible error on the part of the board. O'Neil and Bramhill disclose the dispensing of packets, all similarly marked by some sort of uniform label, from an opening in the bottom part of a carton or holder. The front of O'Neil's holder carries indicia in the form of visible dummy packets, clearly indicating what kind of packets are being dispensed and having indicia corresponding exactly to the indicia thereon. We have no doubt, taking judicial notice of the long-standing practice of cigarette merchandisers, that the carton of Bramhill would normally bear indicia telling what kind of cigarettes are in the carton. We can see nothing unobvious or beyond ordinary skill in the art in standing dispensing cartons side by side if there is any reason to use more than one at a time, such as a desire to have different items ready to hand, and it seems to us normal and notoriously old in the dispensing art to prominently mark dispensing apparatus for different articles with distinguishing indicia of some sort. But we need not rely on taking judicial notice of this because Harley clearly suggests it. Of course, it can be argued, as appellant does, that Harley's frame 4 should be equated with appellant's inner carton 15 and that frame 4 is not marked at all; but there is the marking closely adjacent the frame on the cover of the box so the user or purchaser can immediately identify what is in the frame and the contents of the frame are marked to correspond to the marking on the box. Appellant admits that Harley's markings are "color coded markings."

Considering the method invention defined in claim 7 "as a whole," we find that it would have been obvious at the time it was made to a person of ordinary skill in the art.

The decision of the board is affirmed.

Affirmed.